The next case for argument, in re. J. J. Cranston Construction Corp. Mr. Zitpalasak. Yes, good morning, your honors. My name is Joseph Zitpalasak. I'm appearing on behalf of the appellant who is a debtor in the Baker's Court. May it please the court. When a party violates the automatic statement of Chapter 7 case, that violation is not part of the estate that the trustee has the ability, Chapter 7 trustee has the ability to distribute. And the reason why is because under the statute, the only assets that the trustee can administer are those which existed at the time the debtor filed the case as a snapshot. That's what's generally referred to as. So the difference between adverse possession and a violation of the automatic estate with respect to whether or not title ever becomes kosher is that the taking and the violation of the automatic state is void ab initio. So time, no matter how long the thief, the contempt or whatever, however you wanna refer to them, I'd like to refer to them as a thief, holds onto the property. They never are able to sell it because they're simply in possession of stolen goods. The automatic state provision of the United States Bankruptcy Code has two primary goals. The first is to prevent creditors from taking debtor's property during the bankruptcy. Give them a fresh start, like a pause. Give them a moment to kind of catch, get their bearings. That's the purpose of the automatic state. The second very important purpose of the automatic state is to compel a creditor to immediately return property that has taken in violation of the automatic state. The evidence in the record here reflects that the city knew in October of 1991 that the automatic state was in place. They filed a... And at what point did your client know that the stay had been, I'm sorry, at what point did your client know that the stay had been violated? Isn't there evidence in the record showing that that was known in, I don't know if it was 1995, but at some period many years before the motion for reopening was filed. Isn't that correct? No, Your Honor. It's not correct? I apologize. No, go ahead. Mr. Your Honor, the information in the record shows that the debtors, shareholders, children formed an entity called SPK Group. And that SPK Group bid on an auction that the city conducted to sell the property. And when they did that, the city said, we're not going to sell it to you even though you're the winning bidder. And SPK filed a motion, Article 78 said, you have to sell it to us. And the city said, oh, no, no, no, no. We can't sell it to you. We're a possession of stolen property. We can't give you something that we don't have. Let's go to Title II. We have to go, they write, we have to go back to the bankruptcy court. Then after they did that, they just never returned it to the debtors. Now, this is what we know. Wait a second. Didn't one of the Shor brothers ask for a release of the property in 1995? I apologize, I'm having a hard time hearing. Didn't one of the Shor brothers ask for a release of the property from the city in 1995? Right, so the Shor brother didn't come, and he didn't say, you violated the automatic stay, you didn't give it back to me, you're in a position of stolen goods. What he said was, I'd like to redeem it under- Oh, wait a second. He knew that the city was in possession of the property and he asked for a release of the property from the city. Yes. He clearly knew that the city took the position that it was in fee simple. So, right, so the answer is- Oh, yeah, so how do you- So clearly in 1995, one of the Shor brothers knew that the city wrongfully possessed the property. Knowing, all right, so the Shor brother, he thought that the city had good title. He did not know that they had taken it in violation of the automatic stay. Well, did he know that there'd been a bankruptcy? Of course he did. The Shor brother- He was in the company that went bankrupt, right? Let's look at the chronology, Your Honor. Just answer my question. Did he- Yes. He was the principal of the company that went bankrupt, correct? Correct, however- One would think that he, excuse me, one would think he would know what the company owned. Therein lies the rub, Your Honor. When the automatic stay was violated, the debtor was pushed out of being a debtor in possession and the trustee taken over. If you look at the case law, when the trustee takes over- But if he knows enough to go to the city and ask for a release, then it seems to me, it's not too hard to connect the dots that he's made the conclusion that the city owns the property. Yes, Your Honor, the problem here is not that the debtor knew that the city owned the property. The question, and the city's alleging, is that the debtor knew that they took it in violation of automatic stay, knew they were in possession of stolen property, and failed to go get it. We had no idea that they were in violation of automatic stay. There's no question here that they violated automatic stay when they took the property. There's no question that later on, they said to the Supreme Court of New York State, hey, we're in possession of stolen property. Was he receiving notices of the bankruptcy? Wouldn't he have received a notice with regard to the bankruptcy sale? There was no bankruptcy sale, Your Honor. This is an interim taking, very different. What happens is that the city simply deeds the property to themselves. It's not like a typical auction. They don't go, they just simply deed the property to themselves. It's even quite possible here, Your Honor, which is specific. Without notice to anybody? I'm sorry? Without notice to anyone? That's the way it works. The city simply records a deed. What's even fascinating about this case, which really is... Then what did he figure out in 1995? The city admitted. The city actually said when S.P.K. sued them... Oh, that's not your answer. You're not answering my question. How did he figure it out that he should go to the city and get a release? How did who figure it out, Your Honor? The Schor brother. Oh, the Schor brothers went on activist and they saw that Fee Simple was owned by the city. They had no idea what they were doing. So they went to a public record? Yes, and the public record said... So in 1995, they knew that the city was entitled? Yes, knowing that the city was entitled didn't cure the city's violation of taking the property in which it was a violation of the United States. One would think that one would have wanted to know since it was their property. How did they get it? Oh, there's no question how they got it. It was clear. They did it to themself. The problem was they filed Chapter 11, the Chapter 7 trustee took over. They were pushed out of possession. The Chapter 7 trustee probably was never even given notice of the fact that the city took it. How do we know that? Because the Chapter 7 trustee abandoned it when he filed the Notice of No Distribution. He said, there's no assets to be taken. If the Chapter 7 trustee had even known himself, he would have immediately gone after it and said there's a violation, state violation. Or alternatively, he knew about it. And he said, it's not an asset of the estate because it didn't exist at the time the case was filed. So therefore, I can't take it anyways. The point here is very simple. The city took it in violation of the United States. There's no question of that. In 1992, when the SBK brothers said sell it to us, we were the one who bid it, the city said, oh, no, no, no, no, we're not going to do it to you because we stole it, we can't give it to you. The city still didn't return it. The city kept it for literally 25 years. And they want to blame us for the fact that we didn't go and compel them to give it back. Good job blaming the victim. The fact of the matter is that the city flouted the law on a level of egregiousness that I don't think has ever occurred before, at least in the case law that I've seen. A thief cannot benefit from its thievery. Civil contempt under USBC section 105A holds that a defendant's profits earned from its theft are compensatory damages. Here, the city stole the property, collected rents, and is still holding on to them. The debtor has supplied in the record evidence unequivocally showing that there's a very high possibility that the city is in possession of defendant profits. The city never stated that it doesn't have records that it collected profits. It said that it doesn't have proof of the expenses related to managing the property. That doesn't help the city. It's still holding defendant's profits. It's still benefiting from its thievery. OK. I think we have your argument. You've got some rebuttal time? Yes. Thank you. May it please the court. Carol Shamoon on behalf of Appellee City of New York. The bankruptcy court denied the motion to reopen this 30-year-old bankruptcy case. And the district court properly affirmed, as appellant identifies no error of law or fact or other basis to find an abuse of discretion, this court should affirm and the appeal should be dismissed. The denial of the motion to reopen rests on two independent grounds. First, there's no good cause to be reopening this case because it would be futile. Damages could not plausibly be proven for a number of reasons. And secondly, laches. It's an extensive and inexcusable delay, and the city is prejudiced. And what's your prejudice? There's no witnesses, no records, no way to be able to defend against the claim. Is it disputed that there was an automatic stay? Is that the city nevertheless took possession of the property? So the city, so I need to correct some facts because one issue- Go ahead. Yeah, sure. No, it's not. I noticed my colleague on the other side was asserting facts that just not only are not correct, they're wrong. Tell me what you think. This is what I think. The in rem title transfer occurred during the bankruptcy. The Shore brothers and their family remained in possession for five more years. So they continued to operate the property after it had been abandoned back and continued to not pay taxes going back to 1991. So the answer is yes, the title was taken, but there are a number of cases that explain that if possession is not disturbed, that there's no damage to that. Then, while not paying for five more years, appellant, aware about the taking of the title, chose, instead of voiding title, to game the system, to form an affiliate, to buy it at auction without disclosing who they were, so that they can get the property free of the property tax and all the debt. And we know this, because just prior to that auction, appellant filed an installment application that said, here was the bankruptcy. Here was the in rem title. And we can't pay, because the property is worth far less than the taxes and the debt. So there was no harm even back in 19. There's a reason why Cranston did not void title. Because instead, they sued the city so that they could get it free and clear. They're the ones that were trying to scam the city. And the city ultimately did return the property. So were they trying to correct that? That would make some sense for reopening. But the city did return it. And some new investor came along in 2018 and sold it for $4 million. The Shores made out a million plus. Mr. Schwartz made out a million plus. And they said, well, hang on to the property for two years till we get our money. And then we'll sue the city afterwards. Are you arguing prejudice based in part on what would be needed to unwind a whole bunch of complicated transactions that transpired over a period of decades? Yes, you cannot unscramble those eggs, see the Shores mysteriously can't remember. And they're gone. They're dead. The one son who was there, if you look at his testimony, he says, it's been 30 years. I couldn't possibly remember. And here he is trying to get money for damages. I don't see how they were done. They never paid taxes. They had an option on the property. They each took a million and a half, flipped it, and then come back and say, we're supposed to give them money for what? I don't know. And I don't actually understand their argument that the city was collecting rent, the Shores were collecting rent. That's not in the record. It's not in the record because appellant had a- It's not in the record that there was a doctor or a dentist conducting a practice there and paying rent. No, that's not what the record says. What the record says is the doctor that was there alleged he was paying rent. And Peter Shore, the one who testified at trial who couldn't remember, insisted no such rent was ever paid. And we cite to it in our breach a stipulated fact sworn by Mr. Shore that no rent was ever collected. So I mean, that's the other thing. You have this Dr. Silberman. He's not a party to this. He was the adversary. He ended up in a litigation dispute with these very Shore family about their business, separate to what was happening with the property and the unpaid taxes. So while that dispute was going on, now Mr. Schwartz in 2018 finds this opportunity for himself to flip the property and says, I have an idea. There's a stay violation. Maybe we can get some money from the city. And so digs up this, I don't know what, it's not before the court, some part of that litigation between this Dr. Silberman, who has nothing to do with this case, and the Shores. And again, the Shores utterly disputed what Dr. Silberman said because he was their adversary. So were we to have a trial on this, we'd put Mr. Shore on the stand and we'd present him, which we actually did do. It's in the record. We presented him with the stipulation that said no rent was paid. And he said, that's my statement. I can't remember. He can't remember anything. The only person who could possibly know. So the ground of prejudice is all of this is dissolved in the fog of time, and no one knows what happened in all of these tangled arrangements. No one knows. I mean, like I said, I can only, based on what I see, I can see that this is a scam. The reason they didn't void title, the people, if they were still alive to testify, we recognize that they didn't void the MRM title because they wanted to get away with clearing the taxes without paying them. And so ultimately, the city did give the property back voluntarily. And the folks who are here today were not only not harmed, they just made out like bandits. And that's why they're complaining. They don't want to give that money. Where this case reopened, Judge Mazamorino said, guess what? That $4 million you took, we'd have to put that back in the pot. And the Chapter 7 trustee would say, they said, absolutely not. It's our money. We want to get more damages. We've been injured. Me, Mr. Schwartz, and Mr. Schwartz. OK. All right. Is there anything else? Thank you. All right, thank you. Oh, yes, sir. Thank you for your comments. So the city collected rents. They have records of those rents that they collected. They've never said they didn't have. We filed the motion to reopen. We didn't have the ability to have discovery. We weren't able to start a 2004 examination. We weren't able to make demands. We weren't able to get the records that the city had. The city knows how much it collected in rents. There's no question that the evidence we provided in the motion to reopen shows a high likelihood that they collected rents. The city just said, literally a second ago, that it was in management, and then they pushed us out. We were collecting rents, Your Honors. We were collecting money. You were collecting rents, but your guy doesn't have any memory of how much it was. Your Honor's incorrect, but the books are on us. And all of his books and records are gone, which led Judge Vitaliano to find some of your claims incredulous, end of quote. The problem, Your Honor, is that the city has collected rents. Well, I marvel at your complaining about the city when your client has an incredible absence of memory with regard to this important piece of property that he has no recollection with regard to any of the rents collected. And yet, you have the temerity to ask us to revive a litigation where you ask for profits, but seemingly, expenses would seem to be a portion of whether understanding whether you had profits or not. And yet, your client has no recollection of any of that. Respectfully, Your Honor, I think the court might be complaining our obligation to prove profits with the defendant's obligation to prove that they didn't receive any. Oh, you're suing for damages, are you not? Yes, and as I said, under Section 105A, what's called the civil contempt holds that defendant's profits earned from theft are compensatory damage, not punitive. And that's precisely what we're trying to get. The city collected rents, they flouted the law, they're coming before the court, calling themselves the victim after keeping it for one month short of approximately 25 years. We know for a fact that the rent, they've never said they didn't collect rent, but we haven't even had an opportunity to obtain discovery. Why was your building in, why was your client's building in Chapter 7? Because they hadn't paid any taxes, they were losing money right and left, there was only one asset to that, and that was the property, wasn't it? Respectfully, Your Honor, that's not correct. Oh, really, okay. The city, what's called notice the property for auction, my client filed in Chapter 11. In Chapter 11, they tried to do a workout after one successful workout. Which didn't work out. It converted to Chapter 7. Then the city flouted the law, and they continued to flout the law for 25 straight years, and they come before this court and said, we don't have any, God bless you, they come before this court and they say, we don't have any witnesses to defend ourselves for flouting the law, well, guess what? You can't flout the law on the course of the victim. And they say, oh, latches, Your Honor. Hey, they should have sued us sooner, but they have never provided any evidence, not even one scintilla of evidence that ties us to knowledge, the debtor to knowledge, that the property was taken in violation of our right to stay. Thank you, Your Honors. All right, thank you both. We will reserve decision on this case.